UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ATAIN SPECIALTY INS. CO.,<br>    Plaintiff,<br><br>v.<br><br>HANK'S DAIRY BAR, INC., et al.,<br>    Defendants. | No. 3:19-cv-1085 (SRU) |

**RULING ON CROSS-MOTIONS FOR JUDGMENT ON THE PLEADINGS**

In this action, Atain Specialty Insurance Company ("Atain") seeks a declaration that it has no duty under a commercial general liability insurance policy to defend or indemnify Hank's Dairy Bar Inc. ("Hank's Dairy") regarding a negligence suit between Hank's Dairy and Steven Devost. Jr. ("Devost"). *See generally* Compl., Doc. No. 1.

On December 30, 2019, Atain filed a motion for judgment on the pleadings. *See* Pl's Mot. for J., Doc. No. 19. On February 11, 2020, Devost filed a cross-motion for judgment on the pleadings. Def's Cross-Mot. for J., Doc. No. 29. On April 14, 2020, I heard oral argument, after which I took the motions under advisement. *See* Doc. No. 35. For the reasons stated below, I conclude that the underlying claim is not barred by the coverage exclusions set forth in the insurance policy and that Atain has a duty to defend Hank's Dairy.

Therefore, I **grant** Devost's motion (doc. no. 29) and **deny** Atain's (doc. no. 19).

**I. Standard of Review**

The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that of a Rule 12(b)(6) motion for failure to state a claim." *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). Pursuant to that standard, a motion will be granted only if "it is clear that no relief could be granted under any set of facts that could be

proved consistent with the allegations." *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984). When deciding a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the nonmoving party, and decide whether the nonmoving party has set forth a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).

## II.   Background

This case stems from a tort suit between Devost and Hank's Dairy. Devost alleges that during a June 25, 2017 visit to Hank's Dairy, he "was picked up by [a] large inflatable ball" provided by Hank's Dairy to patron children and "thrown to the ground." *See Devost v. Hank's Dairy Bar, Inc.*, New London Superior Court, Civil Action No. CV19-6039287-S, ("Underlying Complaint"), at ¶¶ 6–8.[1] Devost suffered, among other injuries, a "displaced left arm fracture requiring surgery," "median nerve palsy," and "left elbow septic arthritis." *Id*. at ¶ 10. Devost further alleges that Hank's Dairy "encouraged children to push the large ball down the hill when [it] knew or should have known that such activity would likely result in injury." *Id*. at ¶ 9. On January 22, 2019, Devost filed the Underlying Complaint against Hank's Dairy, seeking monetary damages. *See id*. at ¶ 11.

Hank's Dairy requested coverage for the negligence suit under its commercial general liability insurance policy ("the Policy") with Atain. *See* Pl's Mot. for J., Doc. No. 19, at 2. Hank's Dairy settled the lawsuit with Devost following mediation. *See* Def's Mem. in Opp., ("Def's Opp."), Doc. No. 28, at 2. This case arose because the parties dispute whether the

---

[1] The Underlying Complaint is Exhibit 2 to Atain's Complaint. *See generally* Doc. No. 1-2.

underlying negligence suit is covered under the Policy.  *Id*.  Atain has moved for a declaratory judgment.  *See* Pl. Mot. for J., Doc. No. 19, at 1.  Atain argues that it has no duty to defend or indemnify Hank's Dairy because Devost's suit falls within a policy exclusion.  *Id.*  Hank's Dairy has filed a counterclaim against Atain, alleging that Atain breached the insurance agreement by refusing to defend the underlying action.  *See* Doc. No. 16, at 2–3.  Atain and Devost have filed cross-motions for Judgment on the Pleadings pursuant to Federal Rule 12(c).  *See* Pl's Mot. for J., Doc. No. 19, at 1; Def's Mot. for J., Doc. 29, at 1.

**III.**   **Discussion**

   A.  <u>The Games Exclusion</u>

Atain argues that the plain language of the Policy excludes coverage for Devost's negligence suit.  *See* Pl's Mot. for J., Doc. No. 19, at 8–9.  In support of its argument, Atain relies on the Policy's Exclusion – Climbing, Trampolines, Mechanical Rides, Boxing and Interactive Games ("Games Exclusion").  *Id*. at 5–6.  The Games Exclusion provides, in relevant part:

> This insurance does not apply and there shall be no duty to defend or indemnify any insured for any occurrence, suit, liability, claim, demand or cause of action arising, in whole or part, out of the ownership, maintenance, operation, set-up, take-down, participation in, or any other use by any person, of any of the following:
>
> d. Moon Bounces, Moon Walks, Space Walks or other inflatable games or devices;
>
> g. Boxing games, punching games, or any games that involve kicking;
>
> j. Any other game or device that measures or requires the use of any physical force or strength.

*Id*. at 6.

In response, Devost contends that the large inflatable ball at issue falls "far outside the scope" of the three provisions of the Games Exclusion, which were "manifestly designed" to

3

"void from coverage a particular class of complex devices and systems, including rock climbing walls, moon bounces, paintball, and bungee jumping." Def's Opp., Doc. No. 28, at 6.

Under Connecticut law, an insurance policy must be interpreted in accordance with general contract law principles. *Cont'l Cas. Co. v. Parnoff*, 795 F. App'x 38, 40 (2d Cir. 2019) (quoting *Lexington Ins. Co. v. Lexington Healthcare Grp., Inc*., 311 Conn. 29, 37 (2014)). The interpretation of an insurance policy warrants review of the entire insurance contract to determine "the intent of the parties as expressed by the language of the policy . . . [including] what coverage the . . . insured expected to receive and what the [insurer] was to provide . . ." *Hartford Cas. Ins. Co. v. Litchfield Mut. Fire Ins. Co.*, 274 Conn. 457, 463 (2005) (quoting *QSP, Inc. v. Aetna Casualty & Surety Co.*, 256 Conn. 343, 351–52 (2001)).

Where the terms of a contract are unambiguous, a court should interpret them in light of their "plain and ordinary meaning." *Ellicott Square Court Corp. v. Mountain Valley Indem. Co.*, 634 F.3d 112, 119 (2d Cir. 2011). A court "must give effect to a policy's terms that are clear and unambiguous . . . ." *Parnoff*, 795 F. App'x at 40. To the extent that the policy terms are ambiguous, a court must construe ambiguities in favor of the insured "because the insurance company drafted the policy." *Enviro Express, Inc. v. AIU Ins. Co.*, 279 Conn. 194, 199 (2006). A provision in an insurance policy is ambiguous if "it is reasonably susceptible to more than one reading." *Cont'l Cas. Co. v. Parnoff*, 2018 WL 4356746, at *3 (D. Conn. Sept. 12, 2018), *aff'd*, 795 F. App'x 38 (2d Cir. 2019). Courts may not create ambiguity where the "ordinary meaning" of the contract language "leaves no room for ambiguity." *Parnoff*, 795 F. App'x at 40 (quoting *Johnson v. Conn. Ins. Guar. Ass'n*, 302 Conn. 639, 643 (2011)). Furthermore, "[a]ny ambiguity must derive from the language in the contract rather than one party's subjective perception of the terms." *Id*. (internal quotations omitted).

For the reasons set forth below, I conclude that the Games Exclusion is, at best, ambiguous. It is not clear from the plain language of the exclusion whether the large inflatable ball described in the Underlying Complaint is excluded under the Games Exclusion. Because I am required to resolve any ambiguity in favor of the insured, I am unable to hold that Devost's claim falls beyond the scope of coverage.

      i.  <u>Moon Bounces, Moon Walks, Space Walks or other inflatable games or devices</u>

Subsection (d) of the Games Exclusion bars coverage for suits related to "Moon Bounces, Moon Walks, Space Walks, or other inflatable games or devices[.]" Pl's. Mot. for J., Doc. No. 19, at 6. Subsection (d), however, does not clearly bar coverage for Devost's suit. Atain argues that the plain language of the Games Exclusion shows a clear intent to exclude all inflatable games and devices from coverage, and therefore, a reasonable policyholder would know that a large inflatable ball falls under the exclusion. *See* Pl's Mem. in Opp. ("Pl's Opp."), Doc. No. 30, at 8. Devost asserts that a reasonable policyholder would not construe the Games Exclusion to extend to basic, everyday children's activities because the list itemizes specific large, complex, and extreme activities. *See* Def's Opp., Doc. No. 28, at 7.

The terms "game" and "device" are not defined in the Policy. Where a provision contains no definition of a disputed term, a court should consider "the ordinary, common-sense meaning of the words." *See United States v. Dauray*, 215 F.3d 257, 260 (2d Cir. 2000) (quoting *Harris v. Sullivan*, 968 F.2d 263, 265 (2d Cir. 1992)). Black's Law Dictionary defines "game" as "[a] contest, for amusement or for a prize, whose outcome depends on skill, strength, or luck of the players." GAME, *Black's Law Dictionary* (11th ed. 2019). There is no allegation in the Underlying Complaint that Devost was injured while playing a "game" under the ordinary use of the term. A "game" implies that participants are engaged in "a physical or mental competition

5

conducted according to rules with the participants in direct opposition to each other," and/or "an activity engaged in for diversion or amusement." *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/game (4 May 2020).

Here, the Underlying Complaint alleges that Devost was injured when he "was picked up by [a] large inflatable ball and thrown to the ground" and that Hank's Dairy negligently "encouraged children to push the large ball down the hill." Underlying Compl. at ¶¶ 8–9. Devost does not allege that he was injured while participating in a "contest, for amusement or for a prize," such as soccer or dodgeball. Although a large inflatable ball may be used in a "game," the item itself is only a piece of sports equipment. Under Atain's view, a basketball or football could constitute "an inflatable game" despite never being dribbled or thrown by a participant. That interpretation, however, is not entirely consistent with the ordinary meaning of the term.

Nor is the ball an "inflatable device." "Device" is defined as "an apparatus or article of manufacture." DEVICE, *Black's Law Dictionary* (11th ed. 2019). Other definitions include "something fanciful, elaborate, or intricate in design" and/or "a piece of equipment or a mechanism designed to serve a special purpose of perform a special function." *Merriam-Webster Dictionary*, available at https://www.merriam-webster.com/dictionary/device (4 May 2020). Those definitions do not unequivocally bring the large inflatable ball within subsection (d) of the Games Exclusion.

Although a large inflatable ball is a piece of equipment, Devost does not allege that the ball was designed to serve a special purpose. Under the ordinary use of the term, a "device" is an item made to produce a certain effect. Atain's reading of the Games Exclusion stretches the meaning of the word "device" to include almost any inflatable item that a child may hold,

including a balloon, a volleyball, or a beachball. There is no clear indication that subsection (d) was intended to exclude coverage for such a wide array of commonly used items.

Moreover, subsection (d) is ambiguous because it is not clear whether the language "or other inflatable games or devices" is intended to cover "other inflatable games or devices" *similar to* Moon Bounces, Moon Walks, Space Walks. Read in context with those listed items, the catch-all phrase seems to refer to inflatables similar to "large, inflatable 'moon bounce' contraptions," as Devost suggests. *See* Def's Opp., Doc. No. 28, at 7.[2] For example, a child typically must step into an enclosed moon bounce to use the structure, and then the enjoyment comes from bouncing around inside, often with other children, which can cause accidents. That experience is different than a child playing with a single inflatable ball. Because the terms are undefined in the Policy, I am unable to hold as a matter of law that the ball at issue is clearly an inflatable "game" or "device" within the meaning of subsection (d).

          ii.   <u>Boxing games, punching games, or any games that involve kicking</u>

Subsection (g) of the Policy excludes coverage for suits related to "[b]oxing games, punching games, or any games that involve kicking[.]" Pl's. Mot. for J., Doc. No. 19, at 6. Subsection (g) does not apply because there is no allegation in the Underlying Complaint that boxing, punching, or kicking caused Devost's injuries.

It is well-established that the "question of whether an insurer has a duty to defend its insured . . . is to be determined by comparing the allegations of [the] complaint with the terms of the insurance policy." *Cmty. Action for Greater Middlesex Cty., Inc. v. Am. All. Ins. Co.*, 254 Conn. 387, 395 (2000). Here, the Underlying Complaint alleges that Hank's Dairy provided

---

[2] That reading is bolstered when analyzing the Games Exclusion as a whole, which exempts from coverage a variety of activities that are not commonplace, including laser tag, sumo wrestling, bungee jumping, and helium blimps. *See* Pl's Mot. for J., Doc. No. 19, at 6; Def's Opp., Doc. No. 28, at 10.

inflatable balls for children to "play with on the premises" and that children were encouraged to "push the large inflatable balls down a hill." Underlying Compl. at ¶¶ 6–7. Nowhere in the Underlying Complaint does Devost allege that anyone, boxed, punched, or kicked the inflatable ball at issue. *See id*. Thus, subsection (g) does not exclude coverage for Devost's suit.

### iii. Any other game or device that measures or requires the use of any physical force or strength

Subsection (j) of the Policy excludes coverage for suits related to "[a]ny other game or device that measures or requires the use of any physical force or strength[.]" *See* Pl's Mot. for J., Doc. No. 19, at 6. Atain asserts that subjection (j) applies because Devost's injuries were caused by the "use of physical force," citing the Underlying Complaint's allegation that patron children were encouraged to "push the large inflatable balls down a hill on the premises." Underlying Compl. at ¶ 7. Atain's argument is unconvincing.

First, as discussed above, it is not clear from the plain language of the Policy whether a large inflatable ball is a "game" or "device." Second, the Underlying Complaint does not allege that the cause of Devost's injuries required "the use of any physical force or strength." Devost alleges that he "was picked up by the large inflatable ball and thrown to the ground, thereby causing him to suffer the injuries and losses set forth below." Underlying Compl. at ¶ 8. He does not specify how the ball began moving towards him or whether there was any physical force or strength involved. Because I am required to draw all inferences in favor of the nonmoving party, I am unable to hold that subjection (j) bars coverage.

For the reasons stated above, I conclude that the Games Exclusion does not clearly bar coverage of Devost's suit. Therefore, I **deny** Atain's motion for judgment on the pleadings (doc. no. 19).

B. <u>Atain's Duty to Defend</u>

Devost has filed a cross-motion requesting a declaration that the underlying suit is covered under the Policy. *See* Def's Cross-Mot. for J., Doc. No. 29, at 1. Atain maintains that it has no duty to defend Hank's Dairy because the inflatable ball was excluded under the Games Exclusion. *See* Pl's Opp., Doc. No. 30, at 5.

An insurance company's duty to defend is broader than its duty to indemnify. *See Scottsdale Ins. Co. v. R.I. Pools Inc.*, 710 F.3d 488, 492 (2d Cir. 2013). In deciding whether an insurance company was obligated to defend its insured, courts must first examine "the language of the applicable policy." *See Hartford Cas. Ins. Co.*, 274 Conn. at 464. With the policy language in mind, a court must then examine the underlying complaint and determine whether it alleges an action that "might" be covered under the Policy. *See id.* at 465. A court must conclude that the insurer had a duty to defend the insured "[i]f an allegation of the complaint falls even *possibly* within the coverage . . ." of the policy. *Ryan v. Nat'l Union Fire Ins. Co.*, 692 F.3d 162, 167 (2d Cir. 2012). In accordance with Connecticut law, a court must "construe[] broad policy language in favor of imposing a duty to defend on the insurer . . . ." *Id*. Under Connecticut law, an insurer who wrongfully refuses to defend an insured "should not thereafter be permitted to seek the protection of that contract in avoidance of its indemnity provisions." *Missionaries of Co. of Mary, Inc. v. Aetna Cas. & Sur. Co.*, 155 Conn. 104, 114 (1967).

For the reasons stated above, I agree with Devost. Because the terms of the Games Exclusion are ambiguous, I am unable to hold as a matter of law that Atain has no duty to defend Hank's Dairy in the underlying suit. As a result, I conclude that Atain had a duty to defend its insured because the allegations presented in the Underlying Complaint potentially fall within the scope of coverage. *See Ryan*, 692 F.3d at 167. Moreover, because the Games Exclusion does

not apply, Atain cannot "seek the protection of [the Policy] in avoidance of its indemnity provisions." *Missionaries of Co. of Mary, Inc*., 155 Conn. at 114.

Therefore, I **grant** Devost's cross-motion (doc. no.29)[3] and conclude that Atain has a duty to defend Hank's Dairy in the underlying lawsuit.

## IV. Conclusion

For the foregoing reasons, I **deny** Atain's motion for judgment on the pleadings (doc. no. 19) and **grant** Devost's cross-motion (doc. no. 29).

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of July 2020.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge

---

[3] Although I grant Devost's cross-motion, the Court is unable to enter a declaratory judgment or close the case. Because Devost has not filed a counterclaim against Atain, the only available relief to Devost is a holding that Atain's request for declaratory relief is denied. Hank's Dairy has filed a counterclaim, but has not moved for judgment on the pleadings. There is no indication that Devost has standing or authority to request judgment on behalf of Hank's Dairy. Therefore, Atain's claim against Hank's Dairy and Hank Dairy's counterclaim against Atain remain pending at least until Hank's Dairy moves for judgment on the pleadings.